UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALHARETH ALOUDI,<br><br>  Plaintiff,<br><br>  v.<br><br>INTRAMEDIC RESEARCH GROUP, LLC,<br><br>  Defendant. | Case No. 15-cv-00882-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Pending before the Court is Defendant Intramedic Research Group, LLC's motion to dismiss Plaintiff Alhareth Aloudi's putative class action complaint. For the reasons articulated below, the motion is GRANTED.

## I. BACKGROUND

On February 26, 2015, Plaintiff filed a class action complaint on behalf of a putative nationwide class. Dkt. 1 ("Complt."). The complaint alleges violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as violation of the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty, and breach of implied warranty. Plaintiff's claims are based on Defendant's advertising representations regarding its JavaSLIM product ("Product"), a "green coffee bean extract weight loss formula." Complt. ¶ 17.

On the Product label, Defendant represents that the Product is "Clinically Proven" to cause "significant reduction in actual body mass index (BMI)." *Id.* Defendant describes the Product on its label as an "Advanced Green Coffee Bean Extract Weight Loss Formula." *Id.* The "key ingredients" in the Product "are a 'proprietary blend' which consists of unspecified proportions of Green Coffee (bean) Extract, Coffee Arabica (fruit) Extract, and *Brucea javanica* (fruit) Powder." *Id.* ¶ 26. Plaintiff alleges that the only "active" ingredients in the Product "are chlorogenic acids

and caffeine, neither of which are effective treatments for weight loss." *Id.* ¶ 27.

Plaintiff further alleges that Defendant "has advertised and continues to advertise" that the Product "helps consumers achieve 'safe, effective, RAPID weight loss,'" and that Defendant "has also cited and continues to cite a 'clinical trial' purportedly proving that [the Product's] ingredients provide a 'significant reduction in both body weight and all important Body Mass Index (BMI) in just a few short weeks.'" *Id.* ¶ 18.

<u>Lack of Substantiation Allegations</u>.  Plaintiff alleges that Defendant's "clinically proven" representation and its reference to a "clinical trial" proving the effectiveness of the Product are "false, misleading, and make material omissions." *Id.* ¶ 30.  As support for this allegation, Plaintiff alleges that "there are no clinical trials or scientific studies showing that the Product or its ingredients are safe and effective for weight loss or that the Product or its ingredients cause a significant reduction in body weight and BMI." *Id.* ¶ 23.  Additionally, Plaintiff alleges that "[t]here is no information about any study or any way to access a study" on Defendant's website, and "there are no published clinical trials showing th[at] green coffee extract (chlorogenic acids) used in [the Product], taken as directed, provides a significant reduction in BMI." *Id.* ¶¶ 32-34. Plaintiff alleges that Defendant's failure to provide "adequate 'substantiation' that these statements are truthful and not misleading" constitutes a violation of the Dietary Supplement Health Education Act of 1994 ("DSHEA") and therefore is unlawful under the UCL. *Id.* ¶ 72-73. Additionally, Plaintiff alleges that Defendant's Product representations are false and therefore fraudulent under the UCL because "chlorogenic acids have never been shown to be an effective treatment for weight control." *Id.* ¶ 29.

<u>Falsity Allegations</u>.  Plaintiff separately alleges that "Defendant's packaging and labeling is false and/or misleading because the Product is not effective in achieving these results." *Id.* ¶ 20. As support for his allegations of falsity, Plaintiff alleges that:

- "[T]he FDA has determined caffeine is not a safe or effective treatment for weight control.  While caffeine may 'Increase Energy,' the FDA has in fact determined that there is 'inadequate data to establish the general recognition of the safety and effectiveness' of caffeine for the specified use of 'weight control.'" *Id.* ¶ 28.

2

- "[T]here is a scientific consensus that 'magic pills' containing caffeine and green coffee extract, such as [the Product], do not and cannot provide significant reductions in weight loss alone." *Id.* ¶ 38.

- "In June 2014, [t]he Senate Committee on Commerce, Science, and Transportation: Consumer Protection, Product Safety, and Insurance, held a hearing titled 'Protecting Consumers from False and Deceptive Advertising of Weight-Loss Products.' That hearing focused on the false and misleading nature of weight loss claims made on green coffee extract products. During that hearing, committee Chairwoman Senator Claire McCaskill specifically noted that '[t]he scientific community is almost monolithic against you in terms of the efficacy of [green coffee extract products].'" *Id.* ¶ 39.[1]

- "[T]he FTC has stated, 'Doctors, dieticians, and other experts agree that there's simply no magic way to lose weight without diet or exercise. Even pills approved by FDA to block the absorption of fat or help you eat less and feel full are to be taken with a low-calorie, low-fat diet and regular exercise.'" *Id.* ¶ 40.

- "[O]nly a few months ago, the FTC settled a suit against a green coffee extract dietary supplement manufacturer requiring the company to pay $3.5 million because of its role in fraudulently 'help[ing] fuel the green coffee phenomenon.'" *Id.* ¶ 42.

- "Plaintiff used JavaSLIM as directed, but JavaSLIM did not work as advertised, nor provide any of the promised benefits." *Id.* ¶ 55.

Plaintiff asserts six causes of action on behalf of the putative nationwide class: 1) violation of the CLRA; 2) violation of the FAL; 3) violation of the "unlawful," "unfair," and "fraudulent" prongs of the UCL; 4) violation of the MMWA; 5) breach of express warranty; and 6) breach of implied warranty. Plaintiff seeks monetary and injunctive relief.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

---

[1] Plaintiff does not allege that the "you" in this statement refers to Defendant, or that the hearing considered advertising representations made by Defendant in relation to the Product.

has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because Plaintiff's claims are premised on fraudulent conduct, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124. Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Id.* Allegations of fraud must meet both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### B. UCL, FAL, and CLRA Claims

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To plead a claim under the "fraudulent" prong of the UCL, a plaintiff must plausibly allege that the defendant's product claims are false or misleading. *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff may establish falsity "by testing, scientific literature, or anecdotal evidence." *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345-46 (2003). Under the applicable "reasonable consumer" standard, a plaintiff must "show that members of the public are likely to be deceived." *Id.* (internal quotation marks omitted). The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

California's CLRA prohibits any "unfair methods of competition and unfair or deceptive

4

acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The FAL prohibits any "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. CLRA and FAL claims are governed by the same "reasonable consumer" test as the UCL. *Williams*, 552 F.3d at 938.

### 1. Lack of Substantiation Allegations

As described above, Plaintiff alleges that Defendant's "clinically proven" representation and its reference to a "clinical trial" proving the effectiveness of the Product are "false, misleading, and make material omissions." *Id.* ¶ 30. Plaintiff alleges that Defendant's failure to provide "adequate 'substantiation' that these statements are truthful and not misleading" constitutes a violation of the Dietary Supplement Health Education Act of 1994 ("DSHEA") and therefore is unlawful under the UCL. *Id.* ¶ 72-73. Additionally, Plaintiff alleges that Defendant's Product representations are false because "chlorogenic acids have never been shown to be an effective treatment for weight control." *Id.* ¶ 29.

It is well settled that private litigants may not bring claims on the basis of a lack of substantiation. *King Bio*, 107 Cal. App. 4th at 1345 ("Private plaintiffs are not authorized to demand substantiation for advertising claims."). The California legislature "has expressly permitted prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims. . . . This limitation prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.*; *see also Bronson v. Johnson & Johnson*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("Claims that rest on a lack of substantiation, instead of provable falsehoods, are not cognizable under the California consumer protection laws."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Consumer claims for a lack of substantiation are not cognizable under California law."); *Stanley v. Bayer Healthcare, Inc.*, No. 11-cv-00862-IEG, 2012 WL 1132920, at *6 (N.D. Cal. Apr. 3, 2012) ("Plaintiff's argument that she can assert a UCL 'unlawful conduct' claim based upon violation of [a federal statute that imposes substantiation standards for certain advertising claims] is precluded by the California Court of Appeal's opinion in *King Bio*.").

Plaintiff dedicates the bulk of his opposition brief to arguing that because Defendant's Product representations constitute "establishment claims," Plaintiff may "affirmatively prove[] [them] to be false by demonstrating the absence or inadequacy of the 'establishing' tests." Dkt. No. 20 ("Opp.") at 6.  First, this argument does not support Plaintiff's claim under the "unlawful" prong of the UCL, which is based entirely on Defendant's lack of substantiation as required by DSHEA, not the affirmative falsity of Defendant's Product representations.  Plaintiff does not explain why allegations of a lack of substantiation, on their own, would be sufficient to plead a claim under the "unlawful" prong of the UCL.  Under *King Bio*, such allegations are insufficient to state a claim.[2]

Second, this argument is also not relevant to Plaintiff's other state law claims premised on the falsity of Defendant's representations.  Plaintiff does not cite any case in which the "establishment claim" standard has been applied outside the context of Lanham Act claims, and all of Plaintiff's cited authority exclusively analyzed Lanham Act claims.  Plaintiff does not identify any authority that supports the application of such a standard under California consumer protection laws, nor is the Court aware of any such authority.  *See Marshall v. PH Beauty Labs, Inc.*, No. 15-cv-02101-DDP, 2015 WL 3407906, at *4 (C.D. Cal. May 27, 2015) ("California courts have not . . . adopted the Lanham Act's distinction between establishment and non-establishment claims.").

The California legislature delegated the authority to demand substantiation for advertising claims to prosecuting authorities alone.  Cal. Bus. & Prof. Code § 17508; *see King Bio*, 107 Cal. App. 4th at 1345.  The Court finds that, as a matter of law, Plaintiffs cannot bring consumer protection claims solely on the basis of a lack of substantiation.[3]  Therefore, the Court dismisses

---

[2] As a result, the Court need not reach the parties' arguments related to whether the clinical studies purportedly relied on by Defendant are "competent and reliable" under DSHEA.  *See* Dkt. No. 11 ("Mot.") at 18-22; Opp. at 19-23.  Defendant's request for judicial notice is therefore DENIED AS MOOT.

[3] In reaching this conclusion, the Court must respectfully disagree with the reasoning in *McCrary v. Elations Co.*, No. 13-cv-00242-JGB, 2013 WL 6403073, at *9 (C.D. Cal. July 12, 2013) ("Plaintiff may allege that no credible scientific evidence supports [Defendant's] representations when Defendant puts the clinical proof for its product at issue.  Since Defendant's advertising expressly states that it has clinical proof to support [its product's] effectiveness, Plaintiff plausibly alleges falsity when he contends that there is an absence of such proof.").  The Court finds that

1  Plaintiff's claims to the extent they are based on an alleged lack of substantiation of Defendant's
2  Product representations.[4]

### 2. Falsity Allegations

Defendant next argues that Plaintiff has not alleged any facts in support of its claim that Defendant's Product representations are false or misleading. Dkt. No. 11 ("Mot.") at 12-14. Defendant contends that Plaintiff's citation to general, out-of-context statements made by government agencies "do not show a fact giving rise to Plaintiff's causes of action because they have no bearing on the validity of the substantiation or the truth of Defendant's claims." *Id.* at 13. The Court agrees.

Plaintiff first alleges that Defendant's representations are false because "there is a scientific consensus that 'magic pills' containing caffeine and green coffee extract, such as [the Product], do not and cannot provide significant reductions in weight loss alone," Complt. ¶ 38. This allegation, on its own, is purely conclusory and does not satisfy *Twombly*, which requires "more than labels and conclusions" to state a claim. 550 U.S. at 555. Plaintiff must plead sufficient facts to give Defendant notice of the theory of misconduct against which it must defend.

Moreover, the facts alleged in the complaint that purportedly support Plaintiff's "scientific consensus" conclusion are insufficient to state a claim that Defendant's representations are false:

- "[T]he FDA has determined caffeine is not a safe or effective treatment for weight control. While caffeine may 'Increase Energy,' the FDA has in fact determined that there is 'inadequate data to establish the general recognition of the safety and effectiveness' of caffeine for the specified use of 'weight control.'" *Id.* ¶ 28.
- "In June 2014, [t]he Senate Committee on Commerce, Science, and Transportation: Consumer Protection, Product Safety, and Insurance, held a hearing titled 'Protecting Consumers from False and Deceptive Advertising of Weight-Loss Products.' That hearing focused on the false and misleading nature of weight loss claims made on green coffee extract products. During that hearing, committee

---

such reasoning cannot be reconciled with *King Bio*'s clear prohibition on consumer protection claims based on a lack of substantiation.

[4] Because the Court finds that, as pleaded, the complaint does not state a claim based on the falsity of Defendant's "clinically tested" representations, the Court need not consider the list of studies attached to Defendant's motion to dismiss. Therefore, the Court does not decide whether such studies are "incorporated by reference in the complaint" such that they may be properly considered on a motion to dismiss. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

> Chairwoman Senator Claire McCaskill specifically noted that '[t]he scientific community is almost monolithic against you in terms of the efficacy of [green coffee extract products].'" *Id.* ¶ 39.

- "[T]he FTC has stated, 'Doctors, dieticians, and other experts agree that there's simply no magic way to lose weight without diet or exercise. Even pills approved by FDA to block the absorption of fat or help you eat less and feel full are to be taken with a low-calorie, low-fat diet and regular exercise.'" *Id.* ¶ 40.

- "[O]nly a few months ago, the FTC settled a suit against a green coffee extract dietary supplement manufacturer requiring the company to pay $3.5 million because of its role in fraudulently 'help[ing] fuel the green coffee phenomenon.'" *Id.* ¶ 42.

These general statements are devoid of context, and they are not tied to the Product or Defendant's specific representations about the Product. As a result, the Court finds that they lack a sufficient nexus with the Product representations at issue here and therefore are not sufficient to state a claim that such representations are false.

Finally, Plaintiff alleges that Defendant's representations are false because "Plaintiff used JavaSLIM as directed, but JavaSLIM did not work as advertised, nor provide any of the promised benefits." *Id.* ¶ 55. The Court finds that Plaintiff's anecdotal experience is not described with the specificity required by Rule 9(b); more must be said to state a claim than "the product did not work." *Eckler v. Wal-Mart Stores*, No. 12-cv-00727-LAB, 2012 WL 5382218, at *3 n.2 (S.D. Cal. Nov. 1, 2012).

The complaint does not adequately explain why or how Defendant's Product representations are false. Therefore, Plaintiff has not pled his UCL, CLRA, or FAL claims with sufficient specificity to give Defendant notice of the theory of misconduct it must defend against, and these claims must be dismissed.

### C. Omission Claim

In his opposition brief, Plaintiff contends that his omission claim must survive because Defendant did not challenge it. *See* Opp. at 5. However, nowhere in the complaint does Plaintiff even make clear that he is asserting a claim for fraudulent omission. Indeed, Plaintiff does not identify any specific omission on which he might base a claim. Rather, Plaintiff only alleges that "Defendant's marketing and promotion . . . contains material omissions concerning the Product's

efficacy and supposed mechanism of action." Complt. ¶ 24. Without more, and given the Court's conclusion above that Plaintiff has failed to state a claim that any of Defendant's representations are false, such allegation is insufficient to state a claim for fraudulent omission under Rule 9(b).

### D. Breach of Warranty Claims

The Court assumes, without deciding, that Plaintiff has adequately pleaded the existence of express and implied warranties under California law and the Magnuson-Moss Warranty Act. For the same reasons described above, however, Plaintiff has not alleged sufficient facts to state a claim for the breach of any alleged warranty. Therefore, these claims must also be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's complaint. The Court GRANTS WITH PREJUDICE Defendant's motion as to Plaintiff's claims to the extent they are based on the lack of substantiation allegations. The Court GRANTS WITH LEAVE TO AMEND Defendant's motion as to Plaintiff's claims to the extent they are based on the falsity allegations. Plaintiff may file an amended complaint within 21 days of the date of this Order if he is able to allege facts that, taken as true, specifically disprove Defendant's Product representations.

**IT IS SO ORDERED.**

Dated: July 9, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge