```
                                                         Pages 1 - 12

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE HAYWOOD S. GILLIAM

ALHARETH ALOUDI,                    )
                                    )
             Plaintiff,             )
                                    )
  VS.                               ) NO. C 15-0882 HSG
                                    )
INTRAMEDIC RESEARCH GROUP, LLC,     )
                                    ) San Francisco, California
             Defendant.             ) Thursday
                                    ) November 12, 2015
_____    ) 2:00 p.m.

                      TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES:**

**For Plaintiff:**         THE WESTON FIRM
                           1405 Morena Boulevard
                           Suite 201
                           San Diego, California 92210
                    **BY: DAVID ELLIOT, ESQ.**

                           LAW OFFICES OF RONALD A. MARRON
                           651 Arroyo Drive
                           San Diego, California 92103
                    **BY: WILLIAM BRADFORD RICHARDS, JR., ESQ.**

**For Defendant:**         PRICE PARKINSON KERR, PLLC
                           5742 West Harold Gatty Drive
                           Salt Lake City, Utah 84116
                    **BY: STEVEN WILLIAM GARFF, ESQ.**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

**P R O C E E D I N G S**

**November 12, 2015**                                                      **3:14 P.M.**

    **THE CLERK:** We're Calling C15-00882, the matter of Aloudi versus Intramedic Research Group, LLC.

Please state your appearances for the record, please.

    **MR. ELLIOT:** David Elliott for the plaintiff.

    **MR. GARFF:** Steven Garff for the defendant.

    **MR. ELLIOT:** And I have with me my co-counsel, Bill Richards.

    **THE COURT:** Good afternoon, Mr. Elliott and Mr. Garf.

All right. So we're here on the defendant's motion to dismiss the first amended complaint. I've read the papers, read the authorities carefully.

My overall impression is that, in the defendant's phrasing, the plaintiff essentially doubled down on the theory that was presented in the initial complaint. As I read it as to the falsity claim, the only new allegation is with regard to the mouse study.

Am I right about that?

    **MR. ELLIOT:** That's not entirely correct, your Honor. We have a couple of new allegations and, actually, have a little bit of a spin on some of our old allegations that I believe meets the standard for *Ashcroft v Iqbal.*

Among those -- if you would like to hear about them now.

    **THE COURT:** I would, actually.

1            **MR. ELLIOT:**  Among those we have allegations about
2    the FTC enforcement proceedings against two different
3    manufacturers and suppliers of the key ingredient at issue,
4    which is the green coffee extract.  In both of those
5    enforcement proceedings the FTC found it was false advertising
6    to advertise that substance as being able to convey rapid and
7    significant weight loss, which are the exact same allegations
8    made by the defendant in this case.
9            **THE COURT:**  All right.  Although how is that
10   different in substance from the earlier allegations about the
11   proceedings and the Congressional hearings?
12           **MR. ELLIOT:**  I believe we allege those in more detail
13   with specific quotes from the FTC.
14        If it please the Court, I can quote from the FTC holdings,
15   which are:
16           "The FTC found that, among other things, a green
17        coffee bean extract manufac- -- a marketer falsely
18        claimed that green coffee bean supplements cause
19        significant and rapid weight loss."
20        The same allegations made here.
21        In addition, the FTC fined another manufacturer, because
22   the FTC found that:
23           "The clinical study does not show that green
24        coffee extract causes any kind of weight loss, much
25        less" --

1          **THE COURT:** What paragraph is that?

2          **MR. ELLIOT:** Those are Paragraphs 50 and 51.

3     We also have an allegation in Paragraph 46 about *Applied*
4  *Food Sciences*, which relates to the infamous Vinson study,
5  which I would also like to discuss with the Court, if it please
6  the Court.

7          **THE COURT:** All right.  You may.

8     My question with regard to the Vinson study is:  What
9  facts have you pled to support the inference that the Vinson
10 study is the study upon which the defendants relied?

11         **MR. ELLIOT:** Well, we pled those facts and named the
12 study and actually, luckily for us, we -- we made those
13 allegations based on early discovery in the case in which
14 defendants provided a list which they also provided to the
15 Court in the Mears declaration.  And that specifically
16 identifies the Vinson statement.  It says:  This is the study
17 that we relied on.

18    Now, there is a problem in defendant's pleadings about
19 that study because the declaration confirms that is the study.
20 And it seemed that defendants went to some fairly strenuous
21 effort to distance themselves from that study, which was likely
22 a good idea because it's potentially dispositive of many of the
23 claims made in this case.

24         **THE COURT:** Well, but -- let me ask it a different
25 way.  I don't see anything in what you pled about the basis for

1  this conclusion.  And you can remind me what paragraph that
2  was.
3       It did strike me that there were -- there was an
4  assumption that the Vinson study is the study at issue, but no
5  facts alleged as to why that is what you believe.
6           **MR. ELLIOT:**  We should have drawn the connection more
7  closely your Honor, but it is, I believe, in the complaint.
8       The JavaSLIM product makes the claim right on the label,
9  right on the box, and I'll quote that.
10          "In a double blind clinical trial every single
11          participant who used the key ingredients in JavaSLIM"
12          -- this is Paragraph 32 -- "experienced significant
13          reduction in both body weight and the all-important
14          body mass index in just a few short weeks."
15      The Vinson study is the only -- and I'm using this term
16 with a footnote, the only scientific study that found that
17 conclusion.  And defendant confirmed --
18          **THE COURT:**  Where do you allege that?
19          **MR. ELLIOT:**  That is in -- I'm not sure that we
20 allege that, but we do allege, your Honor, that that is the
21 study that defendants relied on.
22          **THE COURT:**  So, and that's the point, is that that's
23 a conclusion.  And what you just said, if it is the case and
24 you can plead it from a Rule 11 basis, is facts from which that
25 conclusion could be drawn.

1      So if it's as clear as you just said, why wouldn't you
2 apply it?
3           **MR. ELLIOT:**  I'm not sure if I understand the Court's
4 question.
5           **THE COURT:**  Why wouldn't you have pled the facts that
6 you just recounted that aren't in the complaint as a factual
7 basis for the inference that you are drawing in the complaint?
8           **MR. ELLIOT:**  Possibly 20/20 hindsight, your Honor.
9           **THE COURT:**  Because what you're telling me in court
10 is not within the four corners of the record that I'm
11 considering on the motion to dismiss.  You understand that.
12           **MR. ELLIOT:**  Actually, your Honor, it's a plausible
13 allegation.  The plausible allegation is that defendants relied
14 on the study and we base that allegation on discovery that
15 defendants provided to us.
16      Now, I -- I completely agree.  We should have dropped in a
17 footnote or another paragraph that said:  This is the study
18 that defendants provided to us.
19      Nevertheless, I believe it's a plausible allegation, along
20 with the FTC allegations, which are also plausible allegations
21 of falsity?
22           **THE COURT:**  All right.  I understand your position on
23 that.
24      And with regard to the mouse study in particular, again,
25 really the question does go to plausibility.  Why -- why do the

1  results of a study about the effect on mice of a single
2  ingredient plausibly speak to the truth or falsity of
3  representations about a multi-ingredient product that people
4  are taking?
5         **MR. ELLIOT:**  Very good question, your Honor.  And I
6  agree and stipulate that animal studies are not very good
7  support.
8      The Mubarak study is a specific refutation of another one
9  of the studies that defendants said that they were relying on.
10 That is provided in the Mears declaration, if your Honor would
11 like to consult it, if you're interested.
12        **THE COURT:**  Well, again, the -- the record on the
13 motion to dismiss is an analysis of whether the claim is
14 adequately pled.  What's your authority for me looking at a
15 declaration and filling in blanks that aren't alleged in the
16 complaint?
17        **MR. ELLIOT:**  Excellent question.  And I would say in
18 response -- if I could turn back to the Vinson study just for a
19 moment and then come back to the Mubarak study.
20     There is a relative paucity of data in the scientific
21 record on this ingredient.  Mostly because it's -- it verges on
22 common knowledge now that the stuff doesn't work.
23        **THE COURT:**  "Paucity of data" starts to sound exactly
24 like a lack of substantiation claim.
25        **MR. ELLIOT:**  It does sound like that, except the data

1  that does exist, specifically the Vinson study, found that the
2  stuff doesn't work.  And then the study proponent deliberately
3  falsified the data.
4      But what the Vinson study data actually found was that --
5  this was a -- it was set up as a legitimate scientific study,
6  double blind placebo controlled randomized cross-over study.
7      They found when they unblinded the study and looked at the
8  data, that the participants who were taking placebos, sugar
9  pills, lost more weight than participants taking the green
10 coffee extract pills.  Both groups were on a restricted calorie
11 diet, so they were both expected to lose some weight.  But the
12 people on green coffee extract literally did worse than
13 nothing, than taking the placebo.
14      **THE COURT:**  Again, is any of this detail you just
15 described alleged in the complaint?
16      **MR. ELLIOT:**  It is not, your Honor.  If the Court
17 would like to see supplemental briefing on some of that, we
18 would be happy to provide it.
19      **THE COURT:**  I don't think it's really supplemental
20 briefing.  It's a question of whether -- it just strikes me as
21 odd that you wouldn't allege all of this in the complaint, if
22 you could, and the fact that it's not in the complaint, but
23 you're now trying to fill it in in argument, sets my antenna up
24 a little bit.
25      It's not that I haven't reached any conclusion on it, but

```
 1  it's just strange.  I don't need supplemental briefing.  The
 2  question is:  Does the complaint reach the threshold required
 3  by Iqbal and Twombley or not?  And so briefing is really not
 4  the tool by which that's measured.
 5           MR. ELLIOT:  Agreed, your Honor.
 6           THE COURT:  All right.  So, Mr. Graph [sic]?
 7           MR. GARFF:  Yes, your Honor, Mr. Garff here.
 8           THE COURT:  Garff, I'm sorry.  Any response?
 9           MR. GARFF:  So, yes.  Briefly, just the three points,
10  I guess, we're looking at here are the FTC pleadings, the
11  Vinson study pleadings, and -- the allegation, and then the
12  allegation of the Mubarak study, the mass study.
13      Again, they allege these two FTC actions.  This is no
14  different from what was alleged in the original complaint that
15  was dismissed; that there was a lawsuit and the FTC sued the
16  manufacturer of a different product and there was a settlement.
17      And as in Fraker, an FTC lawsuit does not evidence its
18  advertising claims are false, right?  Not when you are not
19  allowed to make lack of substantiation allegations.
20      As for the Vinson study, everything that we've heard from
21  counsel is not in the complaint.  The advertising does not say
22  that it relies on the Vinson study.  And it was in our
23  briefing.  There is several studies that are not the Vinson
24  study, that point that defendant relies on in making
25  advertising claims.
```

1       But that's kind of beside the point because the issue is:
2  Does the complaint actually have facts connecting defendant's
3  representation to the Vinson study?  It doesn't.  It just
4  states the conclusions -- the conclusory fashion, this is the
5  study.  No facts showing that.  No facts showing why.  No facts
6  showing how.  Nothing that can be defended against under the
7  hiding fraud pleading standards.
8       The Mubarak study, the mouse study, tested one isolated
9  ingredient in isolation to see if that was what was making
10 coffee effective.  In fact, it even says that this coffee
11 compound is being shown to help fat loss.  But it says:  Is it
12 this one specific ingredient?  We're going to test one
13 ingredient.
14      It was not a test on the product.  It was not a test on
15 the same compound of a product.  It was a test on part of it.
16       And so as the Court found with other similar studies in
17 the prior complaint, there is no nexus that actually connects
18 the allegations in the complaints to the representations made
19 concerning the product to make them false.
20          **THE COURT:**  All right.  So here is the question for
21 the plaintiffs.  I can see two potential approaches that you
22 might take to this.
23      One is, obviously, you've cited all of these cases on the
24 *Lanham Act* and this establishment claim strand, and you may
25 want to try to develop that as law.  As I said in my order

1  before, I don't think it is the law with regard to the
2  California statutes, but I can see that that is something that
3  you might be interested in trying to push as a development in
4  the law.
5      And, really, the question for you is: Do you even want --
6  if I were to find that you were entitled to it -- another
7  opportunity to amend your complaint or do you want to get to
8  the Court of Appeals and see if your theory flies?
9          **MR. ELLIOT:**  I would much rather be in your Honor's
10 courtroom, frankly.  So we would -- plaintiffs would prefer an
11 opportunity to amend.
12     There are some other claims in the complaint and the
13 motion to dismiss that we haven't touched on today, so if your
14 Honor would like to hear discussion of those, I'm happy to do
15 that as well.
16         **THE COURT:**  Well, the questions I've asked you,
17 really, were my key questions.  I thought the issues were
18 framed up pretty clearly in the briefs, but given -- given what
19 I viewed as relatively minor amendments and the fact that the
20 amendments were by and large similar in type to the ones that I
21 found not to be sufficient before, my thought was that you
22 might be simply saying:  Well, this is what we got, your Honor,
23 and if you don't think it makes it, then we'll see if -- see if
24 the Court of Appeals has a different view on it.
25         **MR. ELLIOT:**  That would be an interesting strategic

```
 1  approach, but that was not our decision.  It's really just a
 2  matter of two weeks to revise the complaint and it's very
 3  difficult to -- if you're not in the industry, it is very
 4  difficult to tease out some of this information.
 5          THE COURT:  All right.  Well, that's helpful
 6  information.  I'll take it under submission and we'll be in a
 7  position, I believe, to issue a ruling relatively quickly one
 8  way or the other.
 9          MR. ELLIOT:  Okay, your Honor.
10      Just -- I don't want to have the last word, but there was
11  something that -- you know what?  I'll stand on that.
12          THE COURT:  All right.  Mr. Garff, I understand that
13  there was a calendaring problem and I know it happens, but I
14  trust that it won't happen again.
15          MR. GARFF:  I apologize, your Honor.  I don't want to
16  make any excuse.  It was a mistake on our end and I take
17  responsibility.  I'm sorry.
18          THE COURT:  All right.
19          MR. GARFF:  It won't happen again.
20          THE COURT:  All right.  So matter submitted.
21          MR. ELLIOT:  Thank you, your Honor.
22          MR. GARFF:  Thank you, your Honor
23      (Proceedings adjourned.)
24
25
```

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, December 17, 2015

.