UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALHARETH ALOUDI,<br><br>    Plaintiff,<br><br>v.<br><br>INTRAMEDIC RESEARCH GROUP, LLC,<br><br>    Defendant. | Case No. 15-cv-00882-HSG<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>Re: Dkt. Nos. 66, 67 |

Pending before the Court is Defendant Intramedic Research Group, LLC's motion to dismiss Plaintiff Alhareth Aloudi's second amended complaint ("SAC"). Dkt. No. 66 ("Mot. to Dismiss SAC"). Having considered Defendant's motion to dismiss, Plaintiff's opposition, and all related papers, the Court finds the matter appropriate for decision without oral argument. *See* Civil L.R. 7-1(b). For the reasons articulated below, the motion is GRANTED.

### I. BACKGROUND

On February 26, 2015, Plaintiff filed a class action complaint on behalf of a putative nationwide class, alleging violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as violation of the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty, and breach of implied warranty. Dkt. No. 1. Plaintiff's claims are based on Defendant's advertising representations regarding its JavaSLIM Green Coffee Extract supplement ("Product").

On July 9, 2015, the Court granted Defendant's motion to dismiss the complaint in its entirety, dismissing Plaintiff's substantiation allegations with prejudice and granting leave to amend Plaintiff's falsity allegations. Dkt. No. 33. On November 13, 2015, the Court dismissed Plaintiff's first amended complaint ("FAC") in its entirety, again dismissing the substantiation

claims with prejudice and granting leave to amend the falsity claims. Dkt. No. 51. Plaintiff filed his second amended complaint ("SAC") on December 4, 2015. Dkt. No. 52.

For purposes of this motion, the Court accepts the following as true: On the Product label, Defendant represents that the Product is "Clinically Proven" to cause "significant reduction in actual body mass index (BMI)" based on "the biggest breakthrough in weight loss research in decades." *Id.* ¶ 12. Specifically, Defendant claims that "[i]n a double blind clinical trial, every single participant who used the key ingredient in JavaSLIM experienced a significant reduction in both body weight and the all-important Body Mass Index (BMI) in just a few short weeks." *Id.* ¶ 66. Defendant further describes the Product on its label as an "Advanced Green Coffee Bean Extract Weight Loss Formula." *Id.* ¶ 19. The Product "contains exactly three active ingredients" in a "'proprietary blend' consisting of unspecified proportions of 'green coffee (bean) extract, Coffee Arabica (fruit) Extract, and *Brucea javanica* (fruit) powder." *Id.* ¶¶ 38-39.

Plaintiff asserts that Defendant's statements about the Product "are all false" because the Product "does not provide 'rapid' or 'significant' weight loss, or reduction in body-mass index, was never 'clinically proven' to provide any of the promised benefits, and was not based on any 'breakthrough' in weight loss research." *Id.* ¶ 13. According to Plaintiff, "[t]he purported 'clinical proof' of the product's 'key ingredient'" was a "falsified study that was later the target of an FTC enforcement action" and "in reality showed that the product does not work." *Id.* ¶ 14.

Defendant moved to dismiss Plaintiff's SAC on January 19, 2016.[1]

**II.   DISCUSSION**

In moving to dismiss the SAC, Defendant renews the two main arguments that it advanced in support of its motion to dismiss both the original complaint and the FAC. First, Defendant argues that Plaintiff continues to premise his UCL, CLRA, and FAL claims on an alleged lack of substantiation, and that the Court previously dismissed such claims with prejudice as not cognizable. Second, Defendant contends that Plaintiff has again failed to allege sufficient facts to

---

[1] In conjunction with its motion to dismiss Plaintiff's SAC, Defendant requested that the Court take judicial notice of an advertising guide issued by the Federal Trade Commission and three public court documents. Dkt. No. 67. Because the Court does not rely on any of these documents, Defendant's request for judicial notice is DENIED AS MOOT.

plausibly state a claim that Defendant's Product representations are false or misleading. Accordingly, Defendant argues, all of Plaintiff's claims fail.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because Plaintiff's claims are premised on fraudulent conduct, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124. Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Id.* Allegations of fraud must meet both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### B. UCL, FAL, and CLRA Claims

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To plead a claim under the "fraudulent" prong of the UCL, a plaintiff must plausibly allege that the defendant's product claims are false or misleading. *Williams v. Gerber Prods., Co.*, 552 F.3d 934,

3

938 (9th Cir. 2008). A plaintiff may establish falsity "by testing, scientific literature, or anecdotal evidence." *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345-46 (2003). Under the applicable "reasonable consumer" standard, a plaintiff must "show that members of the public are likely to be deceived." *Id.* (internal quotation marks omitted). The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

California's CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The FAL prohibits any "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. CLRA and FAL claims are governed by the same "reasonable consumer" test as the UCL. *Williams*, 552 F.3d at 938.

### i. Lack of Substantiation Allegations

In the SAC, Plaintiff continues to premise his UCL, FAL, and CLRA claims in part on allegations such as "[t]here are [] no studies that 'clinically prove' any weight loss effect of green coffee extract, caffeine, or chlorogenic acids, or any effect on BMI, much less any finding supporting a claim that any of these substances cause either rapid or significant reductions in either." SAC ¶ 94. Moreover, according to Plaintiff, "Defendant is aware that the 'clinical study' it cites was not only fraudulent but actually showed that green coffee extract has less effect on weight loss than taking nothing at all." *Id.* ¶ 93.

As the Court made clear in its July 9 Order and again in its November 13 Order, it is well settled that private litigants may not bring claims on the basis of a lack of substantiation. *King Bio*, 107 Cal. App. 4th at 1345 ("Private plaintiffs are not authorized to demand substantiation for advertising claims."). Despite the fact that the Court has twice dismissed Plaintiff's claims with prejudice to the extent they are based on a lack of substantiation, Plaintiff reargues the same cases that the Court found unpersuasive in Plaintiff's two prior oppositions to Defendant's motions to dismiss. Dkt. No. 71 ("Opp'n") at 19-22. The Court will not revisit the cases here, but reiterates

4

its prior holding that any district court opinions permitting falsity claims based on statements that a product is "clinically proven" cannot be reconciled with *King Bio*'s clear prohibition on private substantiation claims absent affirmative proof of the falsity of the substance of those claims. *See King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336 (2003); Dkt. No. 33 at 6 n.3.

Furthermore, Plaintiff's additional allegations that the Vinson Study "was not only fraudulent but actually showed that green coffee extract has less effect on weight loss than taking nothing at all," SAC ¶ 93, fails to transform Plaintiff's substantiation claims into falsity claims for two reasons: (1) the FTC complaint that Plaintiff repeatedly references found that the Vinson Study is not reliable evidence for any conclusion and (2) Plaintiff fails to plead sufficient facts that the Vinson Study is the same "double blind clinical trial" that Defendant references in its Product representations.

The FTC complaint that Plaintiff cites does not establish that Defendant's Product claims are false. Plaintiff cites the FTC complaint in *FTC v. Applied Food Sciences, Inc.*, Case No 1:14-cv-851-SS (W.D. Tex.) and alleges that the Vinson Study data "actually showed that participants . . . lost more weight when they weren't taking [green coffee bean extract] than when they were." SAC ¶ 32. In *Applied Food Sciences*, the FTC alleged that the Vinson Study "either was never conducted or suffers from flaws so severe that no competent and reliable conclusions can be drawn from it." *FTC v. Applied Food Sciences, Inc.*, Case No 1:14-cv-851-SS (W.D. Tex.), Dkt. No. 1 ¶ 26.[2] As an initial matter, Plaintiff cannot rely solely on the FTC's allegations in a separate action to plead the falsity of Defendant's Product statements. *See Fraker v. Bayer Corp.*, 2009 U.S. Dist. LEXIS 125633, 2009 WL 5865687, *12-*13 (E.D. Cal. Oct. 2, 2009). Moreover, even if the Court were to consider the FTC's allegations in *Applied Food Sciences*, those allegations establish that "no competent and reliable conclusions can be drawn from [the Vinson Study]"; thus, the Vinson Study establishes nothing, including Plaintiff's claims "that green coffee extract has less effect on weight loss than taking nothing at all." Accordingly, the FTC's complaint in

---

[2] At the motion to dismiss stage, the Court may consider documents that Plaintiff references in its SAC under the incorporation by reference doctrine. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

*Applied Food Sciences* does not convert Plaintiff's impermissible substantiation claims into falsity claims.

Furthermore, Plaintiff's SAC again fails to draw a connection between the Vinson Study and Defendant's Product representations. Plaintiff warily suggests that the Vinson Study is the clinical study that Defendant relies on in its labeling by contending that "[p]rior to the falsified Vinson/AFS study that Defendant cites, only three 'clinical studies' could even arguably be described as scientific studies of green coffee bean extract." SAC ¶ 73. Plaintiff then proceeds to discount the three prior studies as "unreliable" and "not the [clinical study] that Defendant is citing to in its advertising for its false claim of clinical proof." *Id.* ¶¶ 78, 80, 83-84. Through process of elimination, Plaintiff asserts that the Vinson study must be the study Defendant relied upon. *Id.* ¶¶ 85-93.

There are several problems with Plaintiff's argument, but the most glaring is that Plaintiff has no factual basis to assert that the three cited studies were the only studies that "could even arguably be described as scientific studies of green coffee bean extract." *See id.* ¶ 73. The article Plaintiff cites for the proposition that only three clinical studies of green coffee bean extract existed prior to the Vinson study is limited to "randomised, double-blind, and placebo controlled studies." *See* Onakpoya, I. et al. *The Use of Green Coffee Extract as a Weight Loss Supplement: A Systematic Review*, GASTROENTEROLOGY RESEARCH AND PRACTICE 1 (2011).[3] Nowhere in the SAC does Plaintiff allege that Defendant relied upon a study with all three of these requirements. Instead, according to Plaintiff, Defendant's Product reads,

> In a double blind clinical trial, every single participant who used the key ingredient in JavaSLIM experienced a significant reduction in both body weight and the all-important Body Mass Index (BMI) in just a few short weeks.

SAC ¶ 66. Because the Onakpoya article only analyzed clinical studies that were randomized, double-blind, *and* placebo controlled, any clinical study that was only double blind, as represented in Defendant's Product label, would be excluded from its analysis. Thus, Plaintiff has failed to

---

[3] The Court again considers this study under the incorporation by reference doctrine. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

plausibly allege that only three clinical studies of green coffee bean extract existed prior to the Vinson Study, and Plaintiff's attempt to discredit the three studies analyzed in Onakpoya does not plausibly connect the Vinson Study to Defendant's Product advertising. At best, Plaintiff's argument establishes that Defendant could not have reasonably relied on the Vinson Study or the studies analyzed in Onakpoya — simply another variation of its substantiation claims that the Court previously denied with prejudice.[4]

Accordingly, the Court denies with prejudice for the third time Plaintiff's claims to the extent that they are based on a lack of substantiation.

### ii. Falsity Claim

The Court dismissed Plaintiff's FAC because the falsity allegations "still [did] not adequately explain why Defendant's Product representations are false." Dkt. No. 51 at 1-2. Plaintiff has not remedied this defect in the SAC.

Besides Plaintiff's aforementioned attempts to transform its substantiation claims into falsity claims, the only other non-conclusory statements that Plaintiff has added in the SAC are contentions that "[a]nother of the half-truths and mis-truths *told by the diet supplement industry* is that chlorogenic acid is 'destroyed in the roasting process.'" SAC ¶ 47 (emphasis added). According to Plaintiff, this claim by the diet supplement industry is only "[p]artly true" as demonstrated by the fact that "[c]offee drinkers [] routinely consume large quantities of chlorogenic acid . . . every day." *Id.* ¶ 53. According to Plaintiff, this amount of chlorogenic acid is "several times the recommended maximum dose of JavaSLIM" and thus, if chlorogenic acid actually produced Defendant's claimed weight loss benefits, "every customer in line at Starbucks would be supermodel thin." *Id.* ¶¶ 53-54.

---

[4] At the November 12, 2015 hearing on Defendant's motion to dismiss Plaintiff's FAC, Plaintiff's counsel represented that he could add allegations establishing that the Vinson Study is the study Defendant relied upon. *See* Dkt. No. 54 at 4:8-9:5. Specifically, Plaintiff's counsel asserted that the Vinson Study shows that Defendant's product does not work, and that the Mears declaration admits that Defendant relied upon the Vinson Study in its Product advertising. *Id.* at 4:11-17. Based on these representations, the Court granted Plaintiff leave to amend his complaint for the second time. Despite these assurances, Plaintiff again failed to include any of these allegations in the SAC. Counsel's evasiveness on this point, and his continued attempts to rely on material outside the complaint despite multiple opportunities to amend, leaves the Court with a strong suspicion that counsel simply lacks a Rule 11 basis for making these allegations.

As an initial matter, that the diet supplement industry generally makes only "[p]artly true" claims about roasting chlorogenic acid is irrelevant to whether Defendant's Product advertising, which says nothing about roasting, is false. Furthermore, Plaintiff's conclusory observations regarding the physiques of Starbucks' clientele are unrelated to the efficacy of Defendant's Product, given that the Product contains different amounts of chlorogenic acid and other ingredients not found in Starbucks coffee. Plaintiff's speculation is insufficient to remedy the defects previously identified by the Court.

Accordingly, the SAC still does not adequately explain why Defendant's Product representations are false, and Plaintiff's UCL, CLRA, and FAL claims must fail.

### iii. Omission Claim

Plaintiff again alleges an omission claim, contending that "when a product is ineffective, has no hope of performing as advertised, does not cause rapid weight loss or 'BMI reduction,' and the 'clinical proof' is fraudulent, it is false advertising to omit these necessary details from product marketing." *Id.* ¶ 109. Given the Court's prior conclusion that Plaintiff has failed to state a claim that any of Defendant's representations are false, such allegations are insufficient to state a claim for fraudulent omission under Rule 9(b).

### C. Breach of Warranty Claims

The Court again assumes, without deciding, that Plaintiff has adequately pled the existence of express and implied warranties under California law and the Magnuson-Moss Warranty Act. For the same reasons described above, however, Plaintiff has not alleged sufficient facts to state a claim for the breach of any alleged warranty.

\\

\\

\\

\\

\\

\\

\\

### III.  CONCLUSION

Plaintiff has failed to cure the defects in his complaint twice, and accordingly, the Court GRANTS Defendant's motion to dismiss WITH PREJUDICE.  *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  The clerk shall enter judgment in favor of Defendant and close the case.  Both parties shall bear their own costs of suit.

**IT IS SO ORDERED.**

Dated: 4/19/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge